UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RUDELL CLARK                                        CIVIL ACTION

VERSUS                                              NO: 12-1976

JEFF WATSON & GREG CHAMPAGNE                        SECTION: "A" (3)

### ORDER AND REASONS

Before the Court is a **Motion for Summary (Rec. Doc. 27)** filed by defendants, St. Charles Parish Sheriff Greg Champagne and Jeff Watson. Plaintiff Rudell Clark has filed his opposition (Rec. Doc. 28) to the motion. The motion, noticed for submission on July 17, 2013, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

I.  BACKGROUND

Plaintiff Rudell Clark filed this § 1983 excessive force action for injuries that he claims to have sustained in conjunction with an arrest at his home on August 1, 2011. Defendant Jeff Waston was the deputy sheriff who arrested Clark. Greg Champagne was the duly elected and serving Sheriff of St. Charles Parish at the time of the incident. Both defendants are sued in their personal and official capacities.[1]

Clark alleges that on August 1, 2011, Watson came to his home in Ama, Louisiana, to investigate a complaint about dogs. (Rec. Doc. 1, Complaint at ¶ 7). According to the

---

[1] In his opposition memorandum Clark states that he does not contest dismissal of the *federal* claims against Sheriff Champagne. (Rec. Doc. 28, Plaintiff's Opposition at 11). Clark does intend to pursue his state law claims against Sheriff Champagne. Champagne was not personally involved in any aspect of the incident giving rise to this action. Therefore, Clark's state law claims against Champagne are official capacity claims based on the theory of respondeat superior.

1

complaint, Watson then pushed his way into the residence and threatened to arrest Plaintiff if he did not tell Watson the name of the resident across the street. (*Id.*). Watson then arrested Plaintiff based on an outstanding warrant and "dragged him down the steps of his residence and slammed him into the side of a parked vehicle," thereby breaking a medical stent in Plaintiff's gall bladder. (*Id.*). Clark spent four days in the St. Charles Parish Jail. (*Id.*).

Clark filed the instant federal complaint alleging that the foregoing conduct on Watson's part violated Clark's constitutional rights to be free from illegal detention and imprisonment and from excessive force.[2] (Rec. Doc. 1, Complaint at ¶ 9). In addition to his § 1983 claim, Clark has alleged state law claims of assault and battery against Watson. Champagne is a defendant on the state law claims under a theory of respondeat superior. (*Id.* ¶ 18).

Watson moves for summary judgment on the federal claim arguing that Clark cannot maintain an excessive force claim because he cannot establish significant or serious injury. Alternatively, Watson moves for summary judgment on his defense of qualified immunity arguing that his conduct in carrying out the arrest was objectively reasonable.

Clark responds in opposition that there is no dispute as to the fact that Watson used some amount of force to push Clark into the parked car—the question is how much force was

---

[2] The only parts of the Constitution named in the complaint are the Fifth and Fourteenth Amendments. But Clark's claim is clearly an excessive force claim so the Court assumes that the reference to the Fifth Amendment was made in error. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that a claim that a law enforcement officer has used excessive force during the course of an arrest is to be analyzed under the Fourth Amendment's reasonableness standard).

Clark does not mention a claim for illegal detention in his opposition. The Court assumes that Clark has abandoned this claim because Watson arrested him pursuant to a valid outstanding warrant. In this circuit an otherwise valid arrest is not actionable based on the manner in which it was carried out. *See Flores v. City of Palacios*, 381 F.3d 391, 403 (5th Cir. 2004). Therefore, the sole federal claim being asserted is for a Fourth Amendment excessive force violation.

used and whether that amount of force was excessive to the need. Clark points out that after *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010), the Fifth Circuit has had to change the way in which it considers excessive force cases, now focusing on the nature of the force rather than the extent of the injury. Regarding qualified immunity, Clark contends that it was simply not objectively reasonable to shove or push him into the hood of the parked vehicle while handcuffed.

## II.   DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

In *Harper v. Harris County*, the Fifth Circuit abandoned the requirement that a

plaintiff claiming excessive force must prove *significant* injury. 21 F.3d 597, 600 (5th Cir. 1994) (*citing Hudson v. McMillian*, 503 U.S. 1 (1992)). In the aftermath of *Harper*, the Fifth Circuit nonetheless continued to require "at least some injury" to support an excessive force claim. *See Flores*, 381 F.3d at 396 (*quoting Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). The court recognized, however, that certain injuries are so slight that they will never satisfy the injury element. *Id.* (*citing Glenn v. City of Tyler*, 242 F.3d 307, 315 (5th Cir. 2001) (holding that "handcuffing too tightly, without more, does not amount to excessive force")).

In *Wilkins v. Gaddy*, the Supreme Court reiterated the principles that it had espoused in *Hudson*, *supra*, when it rejected this circuit's prior requirement of significant or serious injury. 559 U.S. 34 (2010). The *Wilkins* Court explained that *Hudson* required that excessive force claims be decided on the nature of the force used rather than on the extent of the injury sustained. *Wilkins*, 559 U.S. at 34. But *Wilkins* did not suggest that the requirement of "at least some injury" was no longer an element of an excessive force claim. To the contrary, the *Wilkins* Court specifically explained that while "serious injury" is not required, its absence is nonetheless not irrelevant. *Wilkins*, 559 U.S. at 37 (*quoting Hudson*, 503 U.S. at 9). The absence of serious injury is relevant because "the extent of injury suffered . . . is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id.* The extent of injury may also provide some indication of the amount of force applied. *Id.* Not "every malevolent touch" gives rise to a federal cause of action for excessive force. *See id.* Consistent with *Wilkins*, the Fifth Circuit continues to require injury as an element of a Fourth Amendment excessive force claim. *See, e.g., Brown v. Lynch*, No. 12-30042, 2013 WL 1611464, at *8 (5th Cir. Apr. 16, 2013) (unpublished); *Aguilar v. Robertson*, 512 Fed. Appx. 444, 449 (5th Cir. 2013). Thus, the

elements of an excessive force claim are 1) an injury, 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness of which was clearly unreasonable. *Brown*, 2013 WL 1611464, at *8 (*citing Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)).

Recognizing then that injury is an essential element of Clark's excessive force claim the Court now turns it attention to the injuries at issue in this case. In his complaint, Clark alleged that the force with which Watson "slammed him into the side of a parked vehicle" broke a medical stent in Clark's gall bladder. (Rec. Doc. 1, Complaint ¶ 7). Certainly, if this were the case then Clark would satisfy the more onerous, yet obsolete requirement of *significant* injury. But the evidence does not support Clark's pleaded allegations regarding the injuries that he claims to have sustained during the arrest.

The parties have submitted evidence from three witnesses who were at the scene during the arrest—notably Clark is not among them. Shawn Palmisano was the parish Animal Control Officer who had been called out to investigate the complaint that Clark was keeping malnourished dogs on his premises. (Rec. Doc. 27-2). Palmisano observed the emaciated dogs on the scene but she was at the back of the residence taking photos when Watson effected the arrest. Palmisano saw Clark after the arrest and she stated that she saw no visible signs of injury, pain, or limping from Clark but he was yelling and cursing about being arrested. (*Id.* at ¶ 9).

Watson testified that Clark began to struggle while being placed under arrest, making movements perhaps suggestive of fleeing, and that Clark was later charged with resisting arrest. (Rec .Doc. 27-4 at 20; Rec. Doc. 28-2 at 24). Watson admits that he pushed Clark against a Ford pickup truck that was parked in front of the residence and he contends that he did this in order to calm Clark down. (*Id.* at 17). When questioned about how much force

5

he used, Watson answered that he used only "[a]s much force as it takes to open the door" or to push it closed. (*Id.* at 18, 19).

Watson testified that while in route to the jail Clark said that he was in pain and needed to go to the hospital. (Rec. Doc. 28-2 at 21-22). Watson was going to take Clark to St. Charles Hospital but Clark wanted to go to West Jefferson. Clark then declined to go to the hospital when Watson told him that he would have to go to St. Charles Hospital. (Rec. Doc. 28-2 at 22).

Laverne Lorio witnessed the arrest. When asked to describe the push against the car, Ms. Lorio said that it was a "forceful push."[3] (Rec. Doc. 28-1 at 26). Lorio noticed that Clark was very upset about the arrest but not trying to punch, kick, or push the officer.

The parties have submitted evidence from two medical witnesses. Bridgette Oubre is a nurse employed at Nelson Coleman Correctional Center and she performed the initial assessment of Clark when he arrived at the facility following the arrest. (Rec. Doc. 27-3). According to Oubre, Clark's medical history was taken and his medications were listed. Clark made not complaints about his condition at that time and there were no visible signs of injury when Oubre examined Clark on August 1, 2011.

The parties deposed Dr. Gary Reiss, Clark's treating gastroenterologist. According to Dr. Reiss, Clark had a stent surgically placed in his gall bladder in June of 2011. Clark's last visit to Dr. Reiss prior to the arrest had been on June 17, 2011. (Rec .Doc. 28-3 at 13). Clark visited Dr. Reiss on August 19, 2011, which was after the arrest, complaining of right upper quadrant abdominal pain, *which was the same pain that Clark had complained about in*

---

[3] Ms. Lorio was asked at her deposition whether "the cops were pushing [Clark] into the police car a little harder than they needed to," Ms. Lorio answered, "Yes." (Rec. Doc. 28-1 at 29). But Clark's excessive force claim is grounded on the force that he claims that Watson used in pushing him up against a parked truck at the scene. Clark has never claimed that Watson used excessive force and injured him while placing him in the police car.

*prior visits.* (*Id.*). Clark told the doctor about the incident with arrest but Dr. Reiss believed that the pain that Clark described was from gall stones, and that the back pain that Clark complained about was chronic. (*Id.* at 14). Dr. Reiss ultimately removed the stent on February 10, 2012, but the stent was in position and looked fine. (Rec. Doc. 27-4 at 14-15). Dr. Reiss believed it "incredibly unlikely" that a stent like Clark's would be impacted by being slammed against a vehicle. (*Id.* at 31). The doctor didn't believe that an incident like the one that Clark had described would affect the stent one way or the other, even if Clark had been slammed into the vehicle with a tremendous amount of force. (*Id.* at 35).

The evidence of record fails to create an issue of fact as to the injury element of Clark's excessive force cause of action. Clark claimed when he filed this action that he had sustained a ruptured stent during the arrest. The medical testimony of Clark's own treating physician belies this assertion because Dr. Reiss confirmed that the stent was in place and in tact when he removed it several months after the arrest. Moreover, according to Dr. Reiss, the pain that Clark complained about on his first visit after the arrest is the same type of pain that Clark had complained about before the arrest. The affidavit of Nurse Oubre, who examined Clark in the immediate aftermath of the arrest, confirms that Clark had no ostensible injuries after the arrest, and that he didn't even complain to her about injuries that he was claiming as a result of the arrest. Clark has submitted no evidence whatsoever to support his contention that he sustained any type of injury, physical or psychological, during the August 1, 2011 arrest.

Clark's excessive force claim also suffers from a lack of evidence from which a jury could infer that the amount of force that Watson used was excessive. Watson and Lorio were the only two witnesses who testified for the record regarding the amount of force used during the arrest. Lorio described the amount of force that Watson used to push Clark up

against the parked truck as "forceful" but that description does not create an issue of fact as to excessiveness. This is particularly true when one considers that Clark sustained no injuries during the arrest. The complete absence of any injury sustained during the arrest indicates that the "forceful" force that Watson used was not excessive to the need.

The motion for summary judgment is GRANTED as to the federal claims asserted against Watson. The motion is likewise GRANTED as to the federal claims asserted against Champagne. (See the explanation at note 1, *supra*).

Finally, both sides request that the Court decline to exercise supplemental jurisdiction over the state law claims if the federal claims should be dismissed (Rec. Doc. 27-1, Defendants' Memorandum at 17; Rec. Doc. 28, Plaintiff's Opposition at 11).

The motion is therefore DENIED as to the state law claims, which the Court will dismiss without prejudice.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary (Rec. Doc. 27)** filed by defendants, St. Charles Parish Sheriff Greg Champagne and Jeff Watson is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to all federal claims asserted against Champagne and Watson in their official and individual capacities and those claims are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to all state law claims against both defendants and those claims are **DISMISSED WITHOUT PREJUDICE**.

July 31, 2013

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE